THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CURTIS GATHRIGHT,<br>　　Plaintiff<br><br>v.<br><br>DELTA AIR LINES, INC<br>　　Defendant. | §<br>§<br>§<br>§   Civil Action No.:<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Curtis Gathright ("Plaintiff" or "Mr. Gathright"), by and through his attorney of record, and files this Original Complaint against Delta Air Lines, Inc. ("Delta" or "Defendant"), and for cause of action under 42 U.S.C. § 1981 would respectfully show the Court as follows:

### I. PARTIES

1. Curtis Gathright is an individual whose address is 1290 Myrtle St Hillside, NJ 07205.

2. Defendant, Delta Air Lines, Inc., is a Delaware corporation with its principal place of business at 1030 Delta Boulevard, Atlanta, Georgia 30354 and can be served through their registered agent for service of process Corporation Service Company 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092, USA.

## II.  JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under 42 U.S.C. § 1981. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant conducts substantial business here.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendant conducts substantial business here.

## III.  FACTUAL BACKGROUND

2. On or about August 1, 2022, Plaintiff Curtis Gathright ("Plaintiff" or "Mr. Gathright") was extended a conditional offer of employment by Defendant Delta Air Lines, Inc. ("Delta"). He officially began his employment with Delta on March 27, 2023.

3. Mr. Gathright was one of only two Black males and one of only five men in a training cohort of twenty-five (25) flight attendants.

4. Despite being in a stark demographic minority, he performed exceptionally throughout each stage of training. He completed required modules, met or

exceeded expectations in flight simulations, and consistently received verbal praise from instructors and peers.

5. From the outset, however, Mr. Gathright was subject to disparate and discriminatory treatment by Delta.

6. Despite no prior disciplinary record and no indications of misconduct, Delta subjected him to baseless scrutiny and held him to a heightened standard not applied to his similarly situated white or female colleagues.

7. On or about May 4, 2023, Mr. Gathright was summoned to an impromptu meeting with Delta managers Jennifer Anderson and an individual named Zane.

8. He was not provided any written notice of the meeting's purpose, nor was he informed of the nature of the allegations beforehand.

9. During the meeting, Delta informed Mr. Gathright of vague and generalized allegations of misconduct, including that he may have "flirted" with someone, "made others uncomfortable," "offered gifts or favors," and possibly "solicited a passenger."

10. Mr. Gathright was also asked whether he had done anything "inappropriate during training."

11. These questions were presented in a speculative, accusatory tone without reference to a complaint, a complainant, or any documentation.

12. Mr. Gathright truthfully and unequivocally denied all such conduct. When he requested additional context, clarification, or the opportunity to respond to specific claims, Delta refused to provide any further detail.

13. At no point during or after this meeting was Mr. Gathright provided with a written summary of the allegations, copies of any complaints, or information about the investigation process.

14. No witnesses were identified. No statements were taken. No HR involvement was documented.

15. On or about May 24, 2023 without any further communication or notice Delta placed Mr. Gathright on suspension.

16. This action was taken unilaterally, without findings, documentation, or procedural review.

17. On or about June 8, 2023, merely two weeks later, Delta terminated Mr. Gathright.

18. The decision was issued without explanation, investigation summary, or any meaningful opportunity to respond.

19. In response, Mr. Gathright filed a timely written appeal the next day, on June 9, 2023.

20. However, he received no acknowledgment or follow-up for over two months.

21. On or about August 16, 2023, Mr. Gathright received a phone call from Delta appeal investigator James Brimberry.

22. For the first time, he was told that the accusations involved "graphic" and "sexually violent" comments allegedly made to a white female employee named Madison, and that he had allegedly appeared to be asleep during a flight test.

23. Mr. Gathright again denied all accusations. At no point before or after the termination did Delta provide supporting documentation, identify witnesses, or explain the basis for crediting Madison's version of events especially considering that her allegations were internally disputed.

24. Several of Mr. Gathright's colleagues expressed disbelief regarding the claims and characterized Madison's account as dishonest and vindictive.

25. These individuals accounts could have exonerated Mr. Gathright or cast doubt on the accusations, but Delta made no effort to conduct a thorough or impartial inquiry.

26. Meanwhile, Delta repeatedly excused or ignored the conduct of similarly situated white employees.

27. For example, a white female flight attendant named Taylor had been the subject of at least three workplace complaints for bullying and inappropriate behavior, according to internal discussions and staff grievances.

28. Despite these complaints, Taylor was never investigated, suspended, or terminated.

29. Mr. Gathright's termination occurred despite his promising trajectory within Delta. Throughout his employment, he had received verbal encouragement and informal assurances from supervisors that he was performing well and was on track for promotion.

30. Based on those representations, Mr. Gathright turned down other employment offers and committed himself fully to Delta's rigorous training and scheduling demands.

31. These promises of upward mobility and continued employment created a reasonable and justifiable expectation that Mr. Gathright would be allowed to remain employed and continue progressing in his career based on merit.

32. Delta's decision to abruptly suspend and terminate Mr. Gathright without investigation, due process, or corroborating evidence was not only discriminatory but also a breach of the promises made to him.

33. Since his termination, Mr. Gathright has experienced severe emotional distress, reputational damage, and an inability to find comparable employment in the aviation industry, which is highly sensitive to allegations of misconduct, especially involving sexual impropriety.

34. At no point did Delta afford Mr. Gathright a meaningful opportunity to respond to the allegations or clear his name.

35. His appeal was addressed in a single phone call without a hearing or the ability to present evidence or confront his accuser.

## IV.   CAUSES OF ACTION

### *COUNT 1: RACE DISCRIMINATION 42 U.S.C. § 1981*

44. Mr. Gathright incorporates the above-mentioned paragraphs as if fully set forth herein.

45. Mr. Gathright brings this claim pursuant to 42 U.S.C. § 1981, which guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens.

46. The statute applies to every phase of the employment relationship including hiring, training, discipline, promotion, and termination and protects against both intentional race discrimination and retaliation for asserting those rights.

47. Mr. Gathright is an African American male and thus a member of a protected class.

48. He was one of only two Black men in a training cohort of twenty-five flight attendants at Delta.

49. He successfully completed the rigorous flight-attendant training program, met all proficiency and performance standards, and was fully qualified to perform the duties of his position.

50. Delta terminated Mr. Gathright's employment, an indisputable adverse employment action that deprived him of the contractual rights and benefits of continued employment, including wages, seniority, and the opportunity to advance within the company.

51. His termination also carried reputational harm that affected his future employability in the commercial aviation industry.

52. Delta's stated reason for Mr. Gathright's termination was not only vague and unsubstantiated allegations of misconduct but also pretextual.

53. The accusations were never the subject of a thorough investigation, nor was Mr. Gathright afforded a meaningful opportunity to respond or clear his name.

54. Instead, Delta acted precipitously, suspending him without due process and moving to termination despite the absence of credible evidence.

55. White employees with comparable or more egregious alleged misconduct were not subjected to similar treatment. For example, upon information and belief, a white female flight attendant named Taylor was the subject of repeated, corroborated complaints of workplace bullying and disruptive

conduct, yet she was neither suspended nor terminated and was permitted to continue working without discipline.

56. This selective application of workplace rules and discipline demonstrates that Delta treated similarly situated white employees more favorably than Mr. Gathright.

57. The facts show that, but for Mr. Gathright's race, Delta would not have suspended or terminated him.

58. The disparate treatment of white comparators and the absence of a legitimate, non-discriminatory reason for his discharge establish intentional race discrimination.

59. As a direct and proximate result of Delta's actions, Mr. Gathright has suffered and continues to suffer lost wages and benefits, damage to his professional reputation, emotional distress, and other consequential harms.

60. The disparate treatment Mr. Gathright endured constitutes race discrimination in violation of § 1981.

## V.    Damages

61. Mr. Gathright is claiming damages at a minimum of $150,000.00. To the extent not previously outlined, Mr. Gathright asserts claims for any and all damages of any sort flowing from the incident and the injuries suffered by as provided by law.

# PRAYER

**WHEREFORE**, Mr. Gathright prays for judgment in his favor and against Defendants, as follows:

a) Back Pay and Front Pay;

b) Punitive Damages;

c) Mental anguish and emotional distress;

d) Pre-judgment and Post-judgment Interests;

e) Reasonable attorneys' fees

f) Court costs; and

g) All other relief this court deems appropriate.

## VI. JURY DEMAND

Plaintiff requests a trial by jury.

This 25th day of September, 2025

/s/ Mitchell L. Albert III
Mitchell L. Albert III
Attorney for Plaintiff
Georgia Bar No.: 307196

Albert III & Associates LLC
3330 Cumberland Blvd.
Suite 500
Atlanta, GA 30339
Telephone (770) 675-6749 Fax (404) 601-6041
mitchell.albert@aiiiaa.com